IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-02631-LTB

MARICELA GARCIA,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

---

## ORDER

---

Plaintiff Maricela Garcia appeals the final decision of Acting Commissioner of Social Security Carolyn W. Colvin ("SSA") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income under Title XVI of the act, 42 U.S.C. § 1381, *et seq.*  I have considered the briefs [Docs. # 18, 19, 20] and the administrative record [Doc. # 13] ("AR").  Oral argument would not materially assist me in determining this appeal.

Ms. Garcia asserts that the administrative law judge's ("ALJ") residual functional capacity assessment is not supported by substantial evidence because it does not limit her to occasional handling and fingering and does not address her need for ready access to restroom facilities.  She alleges that the errors tainted the ALJ's conclusion that she can perform jobs that exist in significant numbers in the national economy and therefore is not disabled.  As I explain below, these arguments are without merit.  Accordingly, I **AFFIRM** SSA's decision.

## I.  Procedural History

On February 22, 2011, Ms. Garcia filed her claim for benefits with SSA, alleging that she became disabled on January 1, 2010.  AR 19.  SSA denied her claim initially on June 9, 2011. *Id.*  Ms. Garcia requested a hearing, which took place on January 31, 2013, before an ALJ.  *Id.* In a decision dated February 12, 2013, the ALJ concluded that Ms. Garcia was not disabled and denied her claim.  AR 30.  Ms. Garcia sought review by SSA's Appeals Council.  On July 31, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of SSA. AR 1; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  On September 23, 2014, Ms. Garcia timely filed the instant appeal [Doc. # 1].  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  Legal Standards

### A.  SSA's Five-Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II and Title XVI of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  SSA has established the following five-step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits.  The process applies to Title II and Title XVI claims alike.  *See* 20 C.F.R. §§ 404.1520, 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity."  *Id.* §§ 404.1520(b), 416.920(b).  If she is, benefits are denied and the inquiry stops. *Id.*  At step two, SSA asks whether the claimant has a "severe impairment," or one that

2

"significantly limits [her] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c).  If she does not, benefits are denied and the inquiry stops.  *Id.*  If she does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience.  *Id.* §§ 404.1520(d), 416.920(d).  If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC"), *i.e.,* what she is still able to do despite her impairments, and asks whether the claimant can do any of her "past relevant work" given that RFC.  *Id.* §§ 404.1520(e), 416.920(e).  If not, SSA goes to the

fifth and final step, where SSA has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience.  *Id.* §§ 404.1520(g), 416.920(g).  At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2; 20 C.F.R. § 416.969.  In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal,* 331 F.3d at 760.

**B.  Standard for Reviewing SSA's Decision**

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record.  *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001);

*Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).  With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon [this] court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler,* 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

### III.  The ALJ's Decision

The ALJ followed the five-step analysis outlined above.  At step one, the ALJ found that Ms. Garcia had not engaged in substantial gainful activity since the alleged onset date of her conditions, January 1, 2010.  AR 21.  At step two, the ALJ found the following severe impairments: history of ulcerative colitis, inflammatory polyarthritis, and chronic headaches. *Id.* At step three, the ALJ concluded that Ms. Garcia did not meet or equal any listed impairment. AR 22.  At step four, the ALJ determined that Ms. Garcia' RFC allowed her "to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)," except that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for no more than 30

minutes at a time without the opportunity to stand and stretch for 1 to 2 minutes; sit for no more

than 60 minutes at a time; and frequently handle and finger with the bilateral upper extremity.

AR 22-28.  The ALJ further determined that she could not perform forceful gripping or grasping

with the bilateral upper extremity and was limited to routine and repetitive tasks.  *Id.*  The ALJ

determined that Ms. Garcia's RFC did not allow her to perform any past relevant work.  AR 28.

At step five, the ALJ concluded that Ms. Garcia's age, education, work experience, and RFC

allowed her to perform jobs that exist in significant numbers in the national economy,

specifically the jobs of assembler of small products, officer helper, and route aide.  AR 29-30.

The ALJ therefore determined that Ms. Garcia was not disabled.  *Id.*

## IV.  Analysis

### A.  Ms. Garcia's Claimed Limitations as to Handling and Fingering

As noted above, one of the severe impairments found by the ALJ is inflammatory

polyarthritis.  AR 21.  At the hearing, Ms. Garcia testified that her "hands get stiff when [she],

like, open[s] up cans or brush[es] [her] teeth" and that she has to "wait until they, you know, get

un-stiff and just drop things when they get un-stiff."  AR 48.  Ms. Garcia takes no issue with the

ALJ's finding that she cannot perform forceful gripping or grasping with the bilateral upper

extremity, but argues that the ALJ erred in finding that she can frequently—rather than only

occasionally—handle and finger.  AR 22.  At the hearing, a vocational expert testified that

altering the ALJ's RFC assessment to allow only occasional handling and fingering would result

in a "[v]ery limited" number of jobs that she could perform.  AR 62-63.

Ms. Garcia primarily relies upon opinions provided by her primary care provider,

physician assistant Paige LeBlanc, PA-C.  In December 2012, Ms. LeBlanc indicated in a

questionnaire that Ms. Garcia could handle and finger with both hands only occasionally, *i.e.*, for

up to one-third of a 40-hour workweek, among various other work-related limitations not at issue

here.  AR 461.  Ms. LeBlanc noted that Ms. Garcia's hands became stiff and she needed to

stretch them after five minutes of handling and fingering.  *Id.*  The ALJ gave "little weight" to

Ms. LeBlanc's opinion.  AR 28.  The ALJ stated that she is not "an acceptable medical source"

and, "[m]ore importantly," that her opinion was "inconsistent with the objective clinical

evidence."  AR 28.  The ALJ explained that "there was no objective evidence of inflammation

except for tenderness and occasional swelling" and that "[n]one of her doctors endorsed extreme

functional limitation of her hands."  AR 24.

The ALJ discussed several aspects of Ms. Garcia's medical history in support of this

assessment.  First, the ALJ noted that, in March 2011, Ms. Garcia's rheumatologist noted no

synovitis on physical examination and opined that her claimed joint pain was likely a side effect

of steroid withdrawal.  AR 25 (citing AR 290).  In addition, x-rays of the hands taken at the same

visit were unremarkable.  *Id.* (citing AR 285-88).  Second, the ALJ noted that a follow-up visit to

the rheumatologist in August 2011 was unremarkable except for tenderness to palpation in the

upper extremities.  AR 26 (citing AR 430).  Third, the ALJ noted that, in December 2012, Ms.

Garcia's rheumatologist observed no inflammation of the joints.  AR 27 (citing AR 434).

Fourth, the ALJ noted the generally conservative treatment that Ms. Garcia had received for her

joint pain, noting that Ms. Garcia was "merely advised to relieve pain with Tylenol" at the

March 2011 rheumatology visit, was told to "manage her symptoms with pain medication

prescribed by her primary care physician" at the August 2011 rheumatology visit, and was

"conservatively treated with Humira" at the December 2012 visit.  AR 25-27 (citing AR 290,

430, 434).  Fifth, the ALJ noted Ms. Garcia's testimony at the hearing that her rheumatologist was "puzzled" because her "joints are not inflamed" despite her complaints of pain.  AR 23, 48.

As the ALJ noted, and as Ms. Garcia does not dispute, Ms. LeBlanc is not considered an "acceptable medical source" because she is a physician assistant and not, for example, a physician like the rheumatologists who treated Ms. Garcia.  *See* SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Opinions from non-acceptable medical sources are not entitled to controlling weight.  *Id.* at *2, 5.  Their opinions "cannot establish the existence of a medically determinable impairment," although they may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.*  The ALJ "generally should explain the weight given" the opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at *6.

Under SSA's regulations, the ALJ properly considered the extent to which Ms. LeBlanc's opinion was consistent with the record as well as the nature of the treatment Ms. Garcia had received.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (in evaluating medical opinions, "the more consistent an opinion is with the record as a whole, the more weight" SSA gives the opinion); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (SSA considers treatments received in evaluating a claimant's symptoms); *see also White*, 287 F.3d at 909-10 (noting that claimant's admission that medication relieved some of her pain supported ALJ's finding that impairments were not as disabling as claimed); *Wall v. Astrue,* 561 F.3d 1048, 1069 (10th Cir. 2009) (noting that claimant "received remarkably conservative treatments for her pain").  Moreover, I conclude

that the evidence discussed above provides substantial support for the ALJ's decision to discount

Ms. LeBlanc's opinion based on these considerations.

Ms. Garcia highlights certain comments in the medical records that support Ms.

LeBlanc's opinion.  For example, she points to an October 2012 record from a rheumatology

office visit indicating that her inflammatory polyarthritis was "uncontrolled."  AR 440.  She also

notes that, at the December 2012 rheumatology visit, discussed above, the doctor stated that she

continued to have severe arthralgias and recommended that she take Humira.  AR 434.  The ALJ

acknowledged and discussed these records, however.  *See* AR 27 (describing Humira treatment

as "conservative[]" and noting that the rheumatologist observed no inflammation of the joints at

the December 2012 visit); AR 28 (citing evidence received "subsequent to June 2011" in

discounting opinions of state agency physician who recommended no manipulative limitations at

all).  In any event, the isolated comments that Ms. Garcia cites are not sufficient to undermine

the substantial evidence that supports the ALJ's findings.

## B.  Ms. Garcia's Claimed Need for "Ready Access to Restroom Facilities"

As noted, another of the severe impairments found by the ALJ was a "history of

ulcerative colitis."  AR 21.  At the hearing, Ms. Garcia testified that her colitis was "more or less

under control" and that, while she was having "some" symptoms, they were "[n]ot too bad" and

occurred "[m]aybe twice a week."  AR 44.  She testified that, when symptoms do occur, she

"need[s] to get [herself] to the bathroom right away" and will experience "really bad diarrhea

and pain and blood in [her] stools."  *Id.*  Ms. Garcia now relies on this testimony to argue that,

"[b]ecause [she] cannot predict when she might have a flare-up, she must have ready access to

restroom facilities" and that the ALJ erred by failing to include such a requirement in her RFC

assessment or to discuss the issue in her decision.  Opening Br. at 8 [Doc. # 18].  Neither Ms.

Garcia's counsel nor the ALJ explored the issue of restroom access at the hearing.  And the

parties' briefs in this Court identify no record evidence that addresses her needs relative to

restroom access, save for medical records that generally describe her complaints of loose stools

and diarrhea.

An ALJ is not required to discuss every aspect of a claimant's testimony so long as the

record demonstrates that the ALJ considered all of the testimony.  *See Clifton v. Chater*, 79 F.3d

1007, 1009-10 (10th Cir. 1996).  In her decision, the ALJ did not specifically address the issue of

restroom access, but referenced the testimony in question more generally, making clear that she

considered it.  Specifically, she noted that Ms. Garcia "admitted her abdominal problems were

under control as she experienced fewer flare-ups."  AR 24; *see also* AR 23 (noting Ms. Garcia's

testimony that she had "experienced an improvement in her ulcerative colitis symptoms").  The

ALJ also addressed the medical evidence regarding Ms. Garcia's ulcerative colitis extensively in

her decision, ultimately finding that there was "insufficient evidence to show that the claimant's

history of ulcerative colitis reduces her exertional capacity below the light level."  AR 24.

For example, the ALJ cited a statement by Ms. Garcia's gastroenterologist in a July 2010

record that an ulcerative colitis flare-up that Ms. Garcia experienced was "not terribly severe."

AR 25 (citing AR 330).  The ALJ noted that the same record indicated that she had stopped

taking her prescribed ulcerative colitis medications for a year.  *Id.*; AR 24 (citing AR 330).  In

addition, the ALJ noted that, "[a]t various times, [Ms. Garcia] admitted she felt better and

acknowledged her symptoms of diarrhea, vomiting, and nausea had either resolved or improved

with medication."  AR 25 (citing AR 296, 309).  Further, the ALJ noted that, from November

9

2011 to August 2012, Ms. Garcia "made less frequent visits to see a doctor regarding ulcerative colitis symptoms." AR 26 (citing AR 401-57). The ALJ's decision therefore demonstrates that she considered not only the testimony in question but all other evidence in the record regarding Ms. Garcia's ulcerative colitis. Further, the records and Ms. Garcia's testimony provide substantial support to the ALJ's RFC assessment with respect to Ms. Garcia's ulcerative colitis symptoms.

With regard to Ms. Garcia's argument that the RFC assessment should have specifically addressed restroom access, I note that the testimony in question—which included statements that her flare-ups were "more or less under control" and "not too bad," AR 44— was equivocal at best and did not suggest that her restroom access needs would materially impact her RFC. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (noting that an ALJ's duty to develop the record arises only where there is "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation"). I cannot conclude that, standing alone, it gave rise to a duty for the ALJ to further develop the record as to restroom access or address the issue in her RFC assessment, particularly because Ms. Garcia's counsel did not pursue the issue at the hearing. *See id.* (noting that "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored"). In any event, as discussed above, I am confident that the ALJ fully considered the evidence regarding Ms. Garcia's ulcerative colitis—including the testimony in question—and reasonably accounted for it in determining her RFC.

10

**V.  Conclusion**

For the foregoing reasons, SSA's decision is **AFFIRMED**.

DATED: September __30__, 2015, at Denver, Colorado.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE

11